FRANK L. McSHANE AND JUDITH BROWN, ET AL., [1] Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent McShane v. Commissioner
Docket Nos. 13802-84, 13803-84, 13804-84, 13805-84.
United States Tax Court
T.C. Memo 1987-151; 1987 Tax Ct. Memo LEXIS 147; 53 T.C.M. (CCH) 409; T.C.M. (RIA) 87151; March 19, 1987. David R. Andelman and J. Thomas Price, for the petitioners. Christine Colley for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined deficiencies in petitioners' income tax for 1976 as follows: Petitioners
Docket No.
Deficiency
Frank K. McShane
and Judith Brown
13802-84
$42,699
Guy T. and
Jean L. Sasso
13803-84
$10,535
William E.
and Florence M. Norton
13804-84
$ 4,256
James J. and
Evelyn M. Vey
13805-84
$ 5,020
*148 After a concession in docket No. 13802-84, the only issue for decision is whether some part of the settlement received by each male petitioner in 1976 is not excludable damages on account of personal injuries but is interest and as such is taxable income. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. At the time their petitions were filed, all petitioners resided in Massachusetts and each pair of them filed a joint income tax return for 1976 with the Internal Revenue Service Center at Andover. In 1971, McShane, Sasso, Norton and Vey [2] were injured [3] by a gas explosion and the ensuing fire which occurred in a Boston and Maine Railroad ("B&M Railroad") yard. At the time of the explosion they were employees of Massachusetts Bay Transportation Authority ("M.B.T.A.") but were actually working for Perini Construction Company ("Perini) in a mobile office maintained by Perini at its job site in the railroad yard. On October 4, 1971, petitioners filed suits in the Suffolk Superior Court against Boston Gas Company ("Boston Gas"), B&M Railroad and Perini for *149 their personal injuries. After a trial by jury, verdicts were returned against Boston Gas and B&M Railroad [4] and in favor of petitioners in the following amounts: Petitioner
Amount
McShane
$ 830,000
Sasso
255,000
Vey
115,000
Norton
75,000
TOTAL
$1,275,000
Each petitioner was also entitled under Massachusetts' law to interest on his verdict from the date his suit was filed until the final judgment entered on the verdict was satisfied. [5]Boston Gas and B&M Railroad filed appeals on November 12, 1974. Shortly thereafter, Robert W. Cornell, Boston Gas' trial attorney, initiated settlement negotiations and all other attorneys involved, either for plaintiffs or defendants, readily joined in the negotiations because they all believed that the appellate court would *150 probably order a new trial. [6] Mr. Cornell was particularly concerned because he feared that a new trial might be limited to the amount of damages and, if this occurred, it would subject his client to the risk of a possible increase in the damages for which his client would be liable for 60% of the total under a side agreement which Mr. Cornell had with the railroad. Mr. Cornell was also concerned about the financial condition of B&M Railroad. J. Newton Esdaile and Michael E. Mone, petitioners' attorneys in the personal injury suits, feared that the appeal by B&M Railroad might result in a recognition by the appellate court of the "common employment" defense asserted by the railroad in the lower court. [7] The recognition of such defense would result in the loss by petitioners of the railroad as a defendant. Furthermore, petitioners' attorneys were convinced that a protracted appeal by the defendants, *151 even if unsuccessful, would jeopardize their collection of the judgments since B&M Railroad had filed for reorganization under the Bankruptcy Act. John J. C. Herlihy, the attorney for B&M Railroad, favored a settlement because in the side agreement Boston Gas had agreed to pay 60% of any settlement and the railroad's remaining liability under the verdicts was substantially covered by insurance. Although he was of the opinion that his "common employment" defense might be recognized on appeal, the attorney for the railroad considered it a distinct possibility that the defense would not be favored because the relevant statute had been repealed for years subsequent to 1971, the year of the accident. As a result of the above negotiations and prior to filing appellate briefs, the parties arrived at settlement agreements under which petitioners received from the defendants in *152 1976 the following lump sums: McShane
$1,001,032
Sasso
301,085
Vey
138,463
Norton
88,554
$1,529,134
The agreements provided that the lump sums were to be paid for the personal injuries received by petitioners; and at the insistence of Boston Gas all of the settlement agreements provided that the lump sums were to be paid "without costs and interest." During the negotiations the tax consequences of the settlements without interest were never discussed or considered. The amounts were arrived at by each of the parties taking into consideration their risk or "exposure" by a continuance of the appeal. The total of the settlements was equal to the total of the verdicts in the lower court plus statutory interest to an arbitrarily chosen date less a 5 percent discount. Counsel for each of the parties agreed that this was a reasonable basis for the settlement of petitioners' claims for personal injuries and each of them recommended the acceptance of the settlements to their respective clients. In a memorandum subsequently prepared for Boston Gas' board of directors, Steiner Midttun, its claims attorney, reported that all claims arising out of the accident were *153 settled as follows: Settlement negotiations between the defendants and also between the defendants and the plaintiffs, resulted in an agreement that would have defendants Boston Gas and B & M R.R. paying the above award plus accumulated interest up to October 1, 1975, less a 5% discount, or a final figure of $1,607,362.48. Under this settlement agreement, Boston Gas agreed to pay 50% of the Whitworth and Perini judgments and 60% of the remaining judgments. A breakdown of this settlement agreement follows: Award Plus
Discounted
Boston Gas
B & M
Plaintiff
Interest
Settlement
Share
Share
McShane
$1,053,718.20
$1,001,032.20
$600,619.32
$400,412.92
Sasso
316,931.85
301,085.25
180,651.15
120,434.10
Vey
145,751.00
138,463.45
83,078.07
55,385.38
Norton
93,215.25
88,554.49
53,132.69
35,421.80
Whitworth [8]
72,830.60
69,189.07
34,594.54
34,594.53
Perini
9,513.60
9,037.92
4,518.96
4,518.96
$1,691,960.50
$1,607,362.38
$956,594.73
$650,767.69
The above settlement was agreed to by our excess insurance carrier. Boston Gas Company's share ($956,594.74) will be apportioned as follows: Boston Gas
n(1) $534,642.14
Lloyd's of London
$421,952.65
*154 Petitioners' settlements were paid in 1976. They did not report any part of the settlement awards as interest income on their 1976 income tax returns. In his deficiency notices respondent determined that the settlement awards included interest income in the following amounts: McShane
$212,532
Sasso
58,835
Vey
29,213
Norton
17,304
OPINION Section 104(a)(2)[9] provides that "gross income does not include * * * the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness * * *." However, interest received on a judgment or settlement of a personal injury claim is included in gross income under section 61(a)(4). Respondent's determination in each case is presumptively correct and petitioners have the burden *155 of proving that no part of the amounts received constituted interest. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a).
Respondent, relying almost exclusively upon Midttun's report, contends that the awards received by petitioners were made up of two clearly distinguishable amounts, i.e., the jury verdicts for the personal injury claims plus the amount of statutory interest that had accrued on those claims, to the date of settlement less a five percent discount. Petitioners contend that the settlements consist entirely of damages for their personal injuries which are excludable from gross income under section 104(a)(2). From the record as a whole it is apparent that each petitioner's claim was based upon the personal injuries received by him in the explosion and that his claim was satisfied with the lump sum received under his settlement agreement. Furthermore, it is undisputed that under state law each petitioner *156 would have been entitled to statutory interest on the verdict rendered in his favor had the verdict proceeded to final judgment after appeal or otherwise. It is also undisputed that if that had been the case, any statutory interest on the final judgment would have been taxable income under section 61. However, this did not occur. Instead, the verdicts were appealed and the cases were settled prior to any final decision with respect to the jury awards. From the above, petitioners argue that prior to their settlements there were no fixed indebtedness upon which to compute interest since there were no existing unconditional enforceable obligations to pay a principal sum. We agree. See Williams v. Commissioner,47 T.C. 689, 692 (1967), affd. 409 F. 2d 1361 (6th Cir. 1968), cert denied 394 U.S. 997 (1969); Christensen v. Commissioner,40 T.C. 563 (1963). Such obligations would only exist if and when a final decision was rendered. Without such a final decision, we must carefully review the settlement agreements and all other evidence in the record in order to determine whether the payments ultimately received included *157 interest. From such a review we have concluded that no interest was included. First, at the insistence of counsel for the principal defendant, each agreement provided that the settlement set forth therein was to be paid "without costs and interest." Secondly, the intentions of all parties as stated by their attorneys are consistent with the payment of no costs or interest. Thirdly, Herlihy, Midttun, McShane, Mone and Esdaile all uniformly testified in an honest and forthright manner that the tax consequences of the settlements were never considered in the negotiations, but instead the settlement amounts were arrived at solely from a consideration by each party of the risks it would be subjected to by continuing the appeal. For instance, Mr. Cornell, counsel for Boston Gas, stated that the amount of the verdicts and any interest ultimately due thereon, were considered only for the purpose of calculating the dollar exposure around which negotiations were centered and not for the purpose of establishing interest as a component of the settlements. Admittedly some of the statements made by Midttun in his settlement memorandum are contrary to this conclusion. However, such statements *158 are not persuasive since Cornell, not Midttun, negotiated the settlement for Boston Gas; and furthermore, the memorandum was written by Midttun after the fact and for the purpose of justifying the agreement by Boston Gas to pay an amount in excess of the verdicts. [10] Consequently respondent's reliance upon the memorandum as a basis for determining that the settlements included interest is in error. *159 We conclude therefore that the total amount received by each petitioner was paid by the defendants in settlement of that petitioner's claim for personal injuries within the meaning of section 104(a)(2) and no part thereof is includable in gross income under section 61. [11]
Decision will be entered under Rule 155 in docket No. 13802-84.
Decisions will be entered for petitioners in docket No. 13803-84; 13804-84 and 13805-84.
Footnotes
1. Cases of the following petitioners are consolidated herewith for trial, briefing and opinion: Guy T. and Jean L. Sasso, docket No. 13803-84; William E. and Florence M. Norton, docket No. 13804-84; and James J. and Evelyn M. Vey, docket No. 13805-84.↩
2. All references to McShane, Sasso, Norton or Vey in the singular are to male petitioners. ↩
3. All petitioners suffered severe burns. McShane's injuries were especially horrendous. He lost all eight fingers and an ear and suffered permanent scarring and disfigurement to his face, neck and other parts of his body. At the time of trial he had been in constant pain since the explosion.↩
4. Perini was not found liable for any of the injuries. ↩
5. The statutory rate of interest was six percent from October 4, 1971 to August 14, 1974 and eight percent thereafter. ↩
6. This was Massachusetts' first personal injury case in which the total verdicts exceeded $1,000,000.↩
7. The common employment defense was based upon allegations that petitioners' employer, M.B.T.A., and B&M Railroad were engaged in a joint project at the time of the accident and that under Massachusetts law, B&M Railroad was entitled to the same workmen's compensation protection as that enjoyed by M.B.T.A.↩
8. The Whitworth and Perini claims were represented by separate judgments obtained in different trials. n(1) Boston Gas was self insured for the first $500,000 and the balance ($34,642.14) represents our pro-rata share of the uninsured post judgment interest.↩
9. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩
10. The purpose of the memorandum clearly appears from the following testimony of Midttun: Respondent's Counsel: What did you mean by "interest"? What were you referring to in that memorandum? Mr. Midttun: Well, Boston Gas Company ultimately agreed to pay an amount that was in excess of the jury award, and for me to obtain -- when we finally agreed to pay a precise figure to settle all of the figures, our share of that was -- well, it was for an amount that was greater than the jury award, so I had to explain why we were paying more than the jury award. Mr. Cornell also stated that the adjustment referred to in the footnote to Midttun's memorandum was reached as a matter of business judgment in the settlement of a dispute with Lloyds of London, the insurance carrier for Boston Gas.↩
11. We have considered each of the opinions cited by respondent as support for his argument to the contrary but find them unpersuasive because each is clearly distinguishable from the cases before us.↩