T.C. Memo. 2000-25


UNITED STATES TAX COURT


YANCY D. GREER AND RITA K. GREER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 191-98.                      Filed January 19, 2000.


<u>Richard L. Weil</u>, for petitioners.

<u>Mary Beth Calkins</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


SWIFT, <u>Judge</u>:  For 1993, respondent determined a deficiency
of $29,025 in petitioners' Federal income tax.

Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

The issue for decision is whether certain funds received in connection with a medical malpractice lawsuit should be treated as taxable interest income or as excludable income from personal injuries. All references to petitioner in the singular are to Rita Greer.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioners resided in Hammond, Louisiana.

Some time prior to 1985, petitioner was diagnosed with a medical disease known as bacterial endocarditis. As a result of the disease, petitioner sustained devastating injuries to her heart and unfortunately will be subject to a lifetime of associated medical and physical complications. In 1985, petitioner filed a medical malpractice claim and a lawsuit against the doctor who, she alleged, failed properly to diagnose and treat her disease.

On December 3, 1992, petitioner won a jury verdict against her doctor in the amount of $100,000 for pain and suffering, disfigurement, and disability and in the amount of $70,000 for medical expenses that had been incurred relating to her endocarditis. On January 19, 1993, a court judgment was entered in favor of petitioner reflecting the total jury award of

$170,000, plus interest from the date petitioner filed the malpractice claim in 1985.

Under Louisiana law, a qualified doctor's maximum personal liability with respect to a medical malpractice award is $100,000, plus interest.  See La. Rev. Stat. Ann. sec. 40:1299.42B(2) (West 1999).  Petitioner's doctor carried a private medical insurance policy (the Doctor's Insurance) to cover his personal liability under the above law.  Medical malpractice awards in excess of $100,000 up to a ceiling of $500,000, plus interest and additional amounts for continuing health care costs, are paid by a State-sponsored patient's compensation fund (the State's Insurance).  See La. Rev. Stat. Ann. sec. 40:1299.42B(1) (West 1999); La. Rev. Stat. Ann. sec. 40:1299.44A(1) (West 1999); La. Rev. Stat. Ann. sec. 40:1299.44C (West 1999).

On February 5, 1993, in partial payment of the above-$170,000 court judgment, petitioner received from the Doctor's Insurance three checks (totaling $125,403) in the separate amounts of $100,000, $7,473, and $17,930.  These checks were not labeled or identified in any way as to whether they represented payments for petitioner's personal injuries, interest, court costs, or otherwise.

On February 8, 1993, petitioner received from the State's Insurance a check in the amount of $195,477.  This check was

labeled "Payment for:  Satisfaction of Judgment" and, by numerical coding reflected on the check, the $195,477 was allocated by the State's Insurance $70,000 to medical expenses and $125,477 to interest.

The total amount petitioner received from both the Doctor's Insurance and the State's Insurance was $320,880 ($125,403 plus $195,477 equals $320,880).

On February 21, 1993, petitioner signed an agreement (the Agreement) which, in exchange for payment of the $125,403 from the Doctor's Insurance, released petitioner's doctor and the Doctor's Insurance from any further liability with respect to the medical treatment petitioner received relating to bacterial endocarditis.

In approximately February of 1993, a document entitled "Satisfaction of Judgment" (the Satisfaction of Judgment document) was signed by petitioner's lawyers in which it was represented that by payment of the $125,403 petitioner's doctor and the Doctor's Insurance satisfied their portion of the above court judgment and that by payment of the $195,477 the State's Insurance satisfied its portion of the court judgment, except for petitioner's future medical costs.

For 1993, petitioners timely filed a joint Federal income tax return on which petitioners excluded from reported gross

income the total $320,880 received from the Doctor's Insurance and from the State's Insurance.

On audit, respondent determined that $143,407 of the total $320,880 petitioner received constituted interest income and should be included in petitioners' gross income.

## OPINION

Under section 61(a), gross income includes all income from whatever source derived unless otherwise excluded by the Internal Revenue Code. Under section 61(a)(4), interest income is specifically included in the computation of gross income.

Under section 104(a)(2), however, "damages" received relating to personal injuries are excluded from gross income. Section 104(a) states in relevant part as follows:

> (a) In general.-- Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include--

> *      *      *      *      *      *      *

> (2) the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness;

As is noted, "interest" on funds relating to personal injuries is not mentioned in the exclusionary language of section 104(a)(2).

Generally, exclusions from gross income are to be narrowly construed. See Commissioner v. Jacobson, 336 U.S. 28, 49 (1949);

Wesson v. United States, 48 F.3d 894, 898 (5th Cir. 1995); Kovacs v. Commissioner, 100 T.C. 124, 128 (1993), affd. without published opinion 25 F.3d 1048 (6th Cir. 1994).

Courts have consistently held that prejudgment interest received on funds awarded for personal injuries does not qualify for the exclusion from income under section 104(a)(2).  See, e.g., Rozpad v. Commissioner, 154 F.3d 1, 5 (1st Cir. 1998), affg. T.C. Memo. 1997-528; Aames v. Commissioner, 94 T.C. 189, 192-193 (1990).

Under Louisiana law, in order that a plaintiff might be made whole after an injury, courts are required to award prejudgment interest on personal injury damages.  See La. Rev. Stat. Ann. sec. 13:4203 (West 1999); Lewis v. Macke Bldg. Serv., Inc., 524 So.2d 16 (La. Ct. App. 1988); Davis v. Le Blanc, 149 So.2d 252 (La. Ct. App. 1963).

Respondent asserts that $143,407 of the total $320,880 petitioner received in connection with her personal injuries ($17,930 from the Doctor's Insurance and $125,477 from the State's Insurance) constitutes interest income under section 61(a)(4) and is not excludable from income under section 104(a)(2).

Petitioners assert that the Agreement and the Satisfaction of Judgment documents are evidence of a separate settlement under which the entire $320,880 petitioner received should be treated

as compensation for her personal injuries and should be excluded from gross income under section 104(a)(2). Petitioners contend that any intimation of interest from the checks or otherwise reflects only internal bookkeeping utilized by the Doctor's Insurance and the State's Insurance.

On February 5, and 8, 1993, approximately 2 weeks after the January 19, 1993, court judgment was entered, the Doctor's Insurance and the State's Insurance issued to petitioner the four checks. With regard to the three checks issued to petitioner by the Doctor's Insurance, according to testimony at trial and correspondence in evidence, the $100,000 check constitutes the $100,000 limit of liability on damages under Louisiana law, the $7,473 check constitutes court costs, and the $17,930 check constitutes interest. We conclude that the check for $17,930 constitutes interest.

With regard to the $195,477 check issued to petitioner by the State's Insurance, the numerical code and other evidence at trial establish that $125,477 thereof constitutes interest. We so hold.

Petitioners' argument that a separate settlement existed between petitioner, the Doctor's Insurance, and the State's Insurance disparate from the court judgment entered in petitioner's favor is not supported by the evidence. The three checks received from the Doctor's Insurance total $125,403, the

exact total amount reflected in the Agreement.  Both the Satisfaction of Judgment document and the $195,477 check issued by the State's Insurance specifically reflect that payment was in satisfaction of the court judgment.  The Agreement and the Satisfaction of Judgment documents simply acknowledge that the doctor, the Doctor's Insurance, and the State's Insurance satisfied their respective financial liabilities under the $170,000 court judgment.

Because Louisiana courts are required to award prejudgment interest on damages awarded relating to personal injuries, petitioners argue that, for income tax purposes, compulsory prejudgment interest should be eligible for exclusion under section 104(a)(2).  Interest, however, is separate and distinct from damages and generally is awarded to compensate for delay in payment.  See Rozpad v. Commissioner, 154 F.3d at 6.  Although petitioner, under Louisiana law, may have received prejudgment interest automatically as a result of her medical malpractice claim, under the Internal Revenue Code that income is nevertheless taxable as interest income.

Although the court judgment amount of $170,000 clearly reflects income from personal injuries within the scope of

section 104(a)(2), the additional $143,407 petitioner received constitutes interest income and must be included in petitioners' gross income under section 61(a)(4).

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.