

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-1-2001

# Francisco v. USA

Precedential or Non-Precedential:

Docket 00-1802

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Francisco v. USA" (2001). *2001 Decisions.* Paper 223.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/223

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 1, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 00-1802

CHARLES FRANCISCO; CECILIA FRANCISCO,
        Appellants

v.

UNITED STATES OF AMERICA

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 98-2245)
District Judge: Honorable Anita B. Brody

Argued: February 5, 2001

Before: BECKER, Chief Judge, AMBRO and STAPLETON,
Circuit Judges

(Filed: October 1, 2001)

        Don P. Foster (Argued)
        Mary E. O'Laughlin (Argued)
        Pepper Hamilton, LLP
        18th & Arch Streets
        3000 Two Logan Square
        Philadelphia, PA 19103
         Counsel for Appellant


        Tamara W. Ashford (Argued)
        Kenneth W. Rosenberg
        Bruce R. Ellisen
        United States Department of Justice
        Tax Division
        P.O. Box 502
        Washington, DC 20044
         Counsel for Appellee

        Arthur L. Bugay
        Galfand Berger
        1818 Market Street
        Suite 2300
        Philadelphia, PA 19103
         Counsel for Amicus-Appellant
        Pennsylvania Trial Lawyers

Association

OPINION OF THE COURT

AMBRO, Circuit Judge.

This tax case presents two questions. First, are "delay damages," received by the plaintiff in a personal injury tort action pursuant to Pennsylvania Rule of Civil Procedure 238, exempt from federal income taxation as damages "received on account of " a personal injury? 26 U.S.C. S 104(a)(2). Second, if delay damages are taxable, how should their amount be determined when the plaintiff has agreed to a post-verdict settlement that fails to allocate the recovery between compensation for the injury and delay damages?

We hold that the personal injury exemption of 26 U.S.C. S 104(a)(2) does not extend to "delay damages" under Pennsylvania Rule of Civil Procedure 238 and thus the recovery of those damages by taxpayers is taxable. While we acknowledge the practical difficulty of determining delay damages when they are subsumed as an unidentified component of a comprehensive settlement agreement, we nonetheless conclude that the District Court reasonably found delay damages to be an element of the settlement at issue in this case. We therefore affirm its judgment.

2

I. FACTS

Charles Francisco and his wife Cecilia (collectively, the "Taxpayers") brought an action in the Court of Common Pleas of Philadelphia County to recover damages for personal injuries Mr. Francisco sustained in a 1983 automobile accident.1 In March 1994, a jury returned a verdict in favor of the Taxpayers -- awarding Mr. Francisco $1,810,000 in damages and Mrs. Francisco $100,000 for loss of consortium. Delay damages in the amount of $1,615,662 were then added to that award2 by the court pursuant to Pennsylvania Rule of Civil Procedure 238, resulting in a total judgment in favor of the taxpayers of $3,525,662.3 The defendants in the personal injury action appealed to the Pennsylvania Superior Court, which affirmed the trial court's judgment in July 1995.

While the defendants' petition to the Pennsylvania Supreme Court for allowance of appeal was pending, the parties agreed to and executed a Settlement Agreement and Release (the "Settlement Agreement") on January 19, 1996. The Settlement Agreement provided for payment to the

Taxpayers of $3,400,000 in exchange for releasing the defendants from liability. It contained no admission of liability and was entered "for the sole purpose of avoiding further costly litigation." Taxpayers' counsel later submitted an affidavit to the District Court in this action explaining that neither the payment of "prejudgment interest" nor the tax consequences of the settlement was considered during settlement negotiations. Instead, he suggested that the verdicts "were considered only for the purpose of establishing the dollar exposure around which negotiations

_____

1. The facts of this case are undisputed and are taken from the Stipulation of Uncontested Material Facts agreed by the parties before the District Court.

2. Delay damages were awarded on Mr. Francisco's personal injury award and not the loss of consortium claim. Under Pennsylvania law, delay damages are not available for loss of consortium. See Anchorstar v. Mack Trucks, Inc., 620 A.2d 1120, 1121 (Pa. 1993).

3. The Stipulation of Uncontested Material Facts appears to have excluded Mrs. Francisco's consortium award in its calculation of the "total award" of $3,425,662.

3

with defendants centered. No specific part of the verdicts was considered in establishing interest as a component of the settlement." After attorneys' fees and costs were subtracted, the Taxpayers received $2,247,727.

The Taxpayers did not include any of the $3,400,000 settlement as income on their 1996 tax return. The Internal Revenue Service (the "IRS") audited the Taxpayers and assessed a tax deficiency of $402,646.4  The deficiency was calculated by first determining what component of the net settlement recovery represented delay damages. The IRS assumed that 46% of the recovery was taxable as delay damages because 46% was the same ratio of delay damages ($1,615,662) to the total award ($3,526,462) awarded to the Taxpayers in court. It then multiplied the net recovery of the Taxpayers ($2,247,727) by 46% and concluded that $1,033,954 of the settlement was taxable as delay damages. The IRS assessed a deficiency of $402,646 on the $1,033,954 in taxable income received by the Taxpayers.

II. JURISDICTION

The Taxpayers paid the deficiency, with interest, and then filed a timely claim with the IRS for a refund on March 17, 1998. See 26 U.S.C. S 6511(a). The IRS denied their

administrative claim and Taxpayers brought this refund suit against the Government in the United States District Court for the Eastern District of Pennsylvania. Because the suit was filed within two years of the IRS's denial of their claim, it was timely. See 26 U.S.C. S 6532(a)(1). Jurisdiction in the District Court was proper pursuant to 26 U.S.C. S 7422(a) and 28 U.S.C. S 1346(a)(1).

On June 22, 1999, the District Court ruled that delay damages were taxable and granted part of the Government's motion for summary judgment. The Court declined to address what portion of the settlement should be properly allocated to delay damages and requested further briefing on the subject. On May 25, 2000, the

_____

4. Though Pennsylvania Rule of Civil Procedure 238 has been in effect since 1979, we know of no prior case in which the IRS has sought to tax delay damages received under this Rule.

4

District Court granted final judgment in favor of the Government after concluding that the IRS's method of apportioning the delay damages was proper.

This Court has jurisdiction over the Taxpayers' timely appeal of both rulings pursuant to 28 U.S.C. S 1291. The District Court's grant of summary judgment in favor of the Government is entitled to plenary review by this Court. See Greenberg v. United States, 46 F.3d 239, 242 (3d Cir. 1994).

III. TAXABILITY OF DELAY DAMAGES

A.

Gross income is defined for purposes of the Internal Revenue Code (the "Code") in 26 U.S.C. S 61. That section states that "[e]xcept as otherwise provided in this subtitle, gross income means all income from whatever source derived." 26 U.S.C. S 61(a). The statute provides an illustrative list of various sources of income. One example is "(4) Interest." 26 U.S.C. S 61(a)(4). The Supreme Court has long acknowledged the comprehensiveness of defining income in this manner. "The broad sweep of this language indicates the purpose of Congress to use the full measure of its taxing power . . . ." Helvering v. Clifford, 309 U.S. 331, 334 (1940); see also Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 432 (1955) ("The definition of gross income has been simplified, but no effect upon its present broad scope was intended."). Given the breadth of S 61, it is

undoubtedly true that the Taxpayers' recovery is gross income under this definition and they do not argue otherwise. This Court has held that "any accession to wealth is presumed to be gross income, unless the taxpayer can demonstrate that the accession fits into one of the specific exclusions created by other sections of the" Code. Rickel v. Commissioner, 900 F.2d 655, 657-58 (3d Cir. 1990) (citing Glenshaw Glass, 348 U.S. at 429-30). The question is how much of the Taxpayers' increase in wealth is specifically exempted from income by other provisions of the Code.

5

Taxpayers assert that the entire proceeds of the settlement are exempt from income under the personal injury exemption, 26 U.S.C. S 104(a)(2). In 1996, that exception excluded from taxation "the amount of any damages (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness." Id. The Supreme Court has noted that the effect of the broad construction of S 61's definition of gross income is that "exclusions from income must be narrowly construed." United States v. Burke , 504 U.S. 229, 248 (1992). For that reason, courts interpreting the personal injury exception have required a two-part showing by taxpayers. "First the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is `based upon tort or tort type rights'; and second, the taxpayer must show that the damages were received`on account of personal injuries or sickness.' " Commissioner v. Schleier, 515 U.S. 323, 337 (1995).

It is undisputed that Taxpayers' underlying jury award was for a tort or tort type rights and that those damages were received on account of personal injury. "For damages to be excludable under section 104(a)(2), the taxpayer's underlying claim must be for tortlike personal injury." Kovacs v. Commissioner, 100 T.C. 124, 127 (1993) (citing Burke, 504 U.S. at 233). We are presented with the more exacting questions of whether delay damages added to the underlying award by the Pennsylvania court pursuant to Rule 238 are "based upon tort or tort type rights" and whether they were received "on account of " a personal injury. Schleier, 515 U.S. at 337. Resolution of these questions requires us to examine the genesis ofS 104(a)(2).

The principle underlying S 104(a)(2) is known as the "human capital" rationale. As recently explained in O'Gilvie v. United States, 519 U.S. 79, 84 (1996), it has its roots in several early tax opinions of the Supreme Court establishing "the principle that a restoration of capital was

not income." Id.; see Doyle v. Mitchell Bros. Co., 247 U.S. 179, 187 (1918); Southern Pac. Co. v. Lowe, 247 U.S. 330, 335 (1918). The statute that eventually became S 104(a)(2) resulted from an extension of the restoration of capital principle to personal injuries. As an Opinion of the Attorney

General described it, a recovery for personal injury"merely take[s] the place of capital in human ability which was destroyed by the accident." 31 Op. Atty. Gen. 304, 308 (1918) (cited in O'Gilvie, 519 U.S. at 85). This replenishment of human capital, in the form of damages, "aim[s] to substitute for a victim's physical or personal well-being -- personal assets that the Government does not tax and would not have taxed had the victim not lost them." O'Gilvie, 519 U.S. at 86. The Supreme Court recently emphasized the importance of fidelity to the human capital rationale, the "original moorings" of S 104(a)(2). "This history and the approach it reflects suggest there is no strong reason for trying to interpret the statute's language to reach beyond those damages that, making up for a loss, seek to make a victim whole, or, speaking very loosely, `return the victim's personal or financial capital.' " Id.

Obviously, we cannot determine whether delay damages make a victim whole or return the victim's personal or financial capital without understanding the purpose served by delay damages under Pennsylvania law. This is not to say, however, that we are deciding an issue of state law. While Pennsylvania law describes the character of the legal right to delay damages, the tax consequences of the Taxpayers' receipt of delay damages are governed solely by federal law, in this case the considerations underlying S 104(a)(2).5 See Helvering v. Stuart, 317 U.S. 154, 162 (1942); Lyeth v. Hoey, 305 U.S. 188, 194 (1938). "A court therefore must look first to state law to ascertain the existence and nature of the interests [the IRS wishes to tax]. While state law creates legal interests and defines their incidents, `the ultimate question whether an interest thus created and defined falls within a category stated by a Federal statute requires an interpretation of that statute, which is a Federal question.' " 21 W. Lancaster Corp. v. Main Line Rest., Inc., 790 F.2d 354, 356 (3d Cir. 1986) (applying this principle to IRS tax liens) (citations omitted).

_____

5. Because the role of state law in this inquiry is merely to describe the nature of the interest being taxed, and because we believe the nature of the interest created by Rule 238 to be settled in Pennsylvania law, we decline the Taxpayers' invitation to certify questions to the Pennsylvania Supreme Court. See 210 Pa. Code S 63.10.

Having recognized the function state law serves in informing our judgment, we proceed to discuss the nature of delay damages under Pennsylvania law.

B.

To ascertain the character of delay damages awarded pursuant to Rule 238, we must begin with a discussion of prejudgment interest in Pennsylvania common law. Traditionally, prejudgment interest, also called "interest eo nomine,"6 was only available when a fixed or liquidated sum was due on a certain date. See Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 395 (3d Cir. 2000). "Interest, as such, is recoverable only where there is a failure to pay a liquidated sum, due at a fixed day, and the debtor is in absolute default." Citizens' Natural Gas Co. v. Richards, 18 A. 600 (Pa. 1889). In these contractual cases, prejudgment interest "is a matter of right and is calculated from the time the money becomes due or payable." American Enka Co. v. Wicaco Mach. Corp., 686 F.2d 1050, 1056 (3d Cir. 1982); see also Penneys v. Pennsylvania R.R. Co., 183 A.2d 544, 546 (Pa. 1962) (citing Restatement (First) of Contracts S 337); Palmgreen v. Palmer's Garage, 117 A.2d 721, 722 (Pa. 1955); Frank B. Bozzo, Inc. v. Electric Weld Div. of Fort Pitt Div. of Spang Indus., Inc., 498 A.2d 895, 898 (Pa. Super. Ct. 1985).

Yet Pennsylvania law did not completely deny to tort victims a remedy for the passage of time. In Citizens' Natural Gas Co. v. Richards, the Pennsylvania Supreme Court established that in some property tort cases, such as "unintentional conversion or destruction of property," prejudgment interest may be awarded. 18 A. at 600. The Court explained:

> Into these cases the element of time may enter as an important factor, and the plaintiff will not be fully compensated unless he receive not only the value of his property, but receive it, as nearly as may be, as of the date of his loss. Hence it is that the jury may allow additional damages in the nature of interest for the

---

6. The English translation is "interest under that name."

> lapse of time. It is never interest as such, nor as a matter of right, but compensation for the delay, of which the rate of interest affords the fair legal measure.

Id. The award of such "compensation for delay" in property torts "is not a matter of right but is an issue for the finder of fact, the resolution of which depends upon all the circumstances of the case." Marrazzo v. Scranton Nehi Bottling Co., 263 A.2d 336, 337 (Pa. 1970); see also American Enka Co., 686 F.2d at 1056. Under either theory, "interest" or "compensation for delay," the plaintiff was compensated at the statutory legal rate of interest of six percent from the date the cause of action accrued. See American Enka Co., 686 F.2d at 1057; Pa. Stat. Ann. tit. 41, S 202 (2000).

However, neither prejudgment interest nor "compensation for delay" was awarded for personal injuries under the common law in Pennsylvania. Conover v. Bloom, 112 A. 752 (Pa. 1921). "Where real property has been taken, injured, or destroyed, [compensation for delay] . . . is an allowable element, and the same is true where the damage is inflicted upon personal property; . . . but not where the claim is for personal injuries, for then the damages are assessed as of the date of the trial, and not of the injury." Id. at 752 (citations omitted); see also Witmer v. Bessemer & L.E.R. Co., 88 A. 314, 315 (Pa. 1913); McGonnell v. Pittsburgh Rys. Co., 83 A. 282, 283 (Pa. 1912) ("In a personal injury case the damages are assessed as of the date of the trial and not of the injury. Hence there can be no general compensation for delay."); Pittsburgh S. Ry. Co. v. Taylor , 104 Pa. 306, 317 (1883) (in a personal injury action, "[i]t was also error to permit the jury to allow interest from the date of the accident to the time of trial upon the amount they might ascertain plaintiff 's damages to have been"). Thus at common law in Pennsylvania a victorious plaintiff was only entitled to interest from the date of the claim's accrual if that claim arose as a contractual obligation for a fixed sum due on a particular date or if the claim resulted from tortious damage to property. No party to this case has brought to our attention any actions in which prejudgment interest or compensation for delay was granted on a personal injury award prior to the enactment of Rule 238.

9

Pennsylvania Rule of Civil Procedure 238 was enacted in 1978 to provide successful plaintiffs in actions for damages for personal or property injuries with compensation for the delay preceding judgment. Its primary provision states:

> At the request of the plaintiff in a civil action seeking

> monetary relief for bodily injury, death or property
> damage, damages for delay shall be added to the
> amount of compensatory damages awarded against
> each defendant or additional defendant found to be
> liable to the plaintiff in the verdict of a jury, in the
> decision of the court in a nonjury trial or in the award
> of arbitrators . . . , and shall become part of the
> verdict, decision or award.

Pa. R. Civ. P. 238(a)(1). It goes on to award damages in an amount that "shall be calculated at the rate equal to the prime rate as listed in the first edition of the Wall Street Journal published for each calendar year for which the damages are awarded, plus one percent, not compounded." Pa. R. Civ. P. 238(a)(3). These "delay damages" are only available to certain plaintiffs and for certain periods of delay. Delay damages are unavailable during periods in which the plaintiff caused delay of the trial or if the defendant made a reasonable written settlement offer and the plaintiff did not recover more than 125 percent of that offer after trial. Pa. R. Civ. P. 238(b).

Because the damages awarded pursuant to Rule 238 are determined by reference to prevailing interest rates, Pennsylvania courts have frequently characterized the rule as providing for "prejudgment interest."[7] In one of the first

_____

7. Taxpayers argue that delay damages available under Rule 238 are not "prejudgment interest" and those cases which have so described the rule "suffer from . . . inattention to detail." Taxpayers' Opening Br. at 19. Given the sheer quantity of cases that have characterized Rule 238 damages as prejudgment interest, we find this argument to be meritless. See, e.g., Weber v. GAF Corp., 15 F.3d 35, 36 (3d Cir. 1994) ("Under Pennsylvania Rule of Civil Procedure 238, a prevailing plaintiff in a Pennsylvania tort action may receive what amounts to prejudgment interest on a compensatory damage award."); Simmons v. City of Philadelphia, 947 F.2d 1042, 1088 (3d Cir. 1991) ("In Savarese, we held that, because the application of state substantive law providing for

10

cases addressing the Rule, the Pennsylvania Supreme Court described it as follows. "Rule 238 pertains to prejudgment interest granted in certain instances to plaintiffs who receive jury verdicts in excess of any settlement offer made by a defendant prior to trial." Laudenberger v. Port Auth. of Allegheny County, 436 A.2d 147, 149 (Pa. 1981). The Court recognized that the rule's source was Pennsylvania's common law heritage of allowing prejudgment interest "in cases concerning liquidated damages and breach of contract cases," and "to recover

compensation for delay in payment after loss in tort cases."
Id. at 154. Nevertheless, the Court noted that Rule 238
extended those doctrines and "undeniably imposes an
additional duty upon defendants in the form of
prejudgment interest." Id. "Rule 238 provides compensation
to a plaintiff for delay in receiving the monetary damages
owing as a result of a defendant's tort. This serves to
indemnify the plaintiff for the money he would have earned
on his award if he had promptly received it." Id. at 154. It
is thus transparently clear that Rule 238 established a new
duty for defendants to provide additional compensation to
plaintiffs -- not as additional damages for their injury --
but to remedy the time value of their award lost during the

_____

prejudgment interest would destroy the uniformity of damages in federal
civil rights cases, Rule 238 does not apply to damages awarded under
section 1983.") (citing Savarese v. Agriss , 883 F.2d 1194 (3d Cir.
1989));
Yohannon v. Keene Corp., 924 F.2d 1255, 1263-64 (3d Cir. 1991) ("the
assessment of pre-judgment interest, sometimes called delay damages");
Trude v. Martin, 660 A.2d 626, 635-36 (Pa. Super. Ct. 1995) ("This result
logically obtains from the new Rule which, while labelled "delay
damages," is really in the nature of prejudgment interest to be added to
compensatory damages awarded at verdict."); Hodges v. Rodriquez, 645
A.2d 1340, 1349 (Pa. Super. Ct. 1994) ("The Laudenberger Court equated
delay damages with prejudgment interest."); Moran v. G. & W.H. Corson,
Inc., 586 A.2d 416, 426 (Pa. Super. Ct. 1991) ("In effect, Rule 238
provides for the award, in appropriate cases, of prejudgment interest.");
Tindal v. SEPTA, 560 A.2d 183, 189 (Pa. Super. Ct. 1989) ("the new Rule
which, while labelled [sic] "delay damages," is really in the nature of
pre-
judgment interest to be added to compensatory damages awarded at
verdict"); Snelsire v. Moxon, 557 A.2d 785, 787 (Pa. Super. Ct. 1989)
("Damages awardable under Rule 238 have been held to be in the nature
of prejudgment interest.").

11

period preceding judgment. See Costa v. Lauderdale Beach
Hotel, 626 A.2d 566, 569 (Pa. 1993).8

Having concluded that Rule 238 permits the awarding of
prejudgment interest, we must recognize one caveat. As the
Taxpayers' repeatedly assert, delay damages are not
available to all successful tort plaintiffs as a matter of right,
but can only be awarded either when the defendant did not
make a reasonable settlement offer or for periods of time for
which the plaintiff is not responsible for causing delay. See
Schrock v. Albert Einstein Med. Ctr., 589 A.2d 1103, 1107
(Pa. 1991). Delay damages thus serve a secondary purpose
to hasten the settlement and conduct of tort actions. See

Laudenberger, 436 A.2d at 151. "Delay damages are incentive to settle and to avoid delay of trial . . . because the defendant may limit the size of the compensation award by settling the case or by choosing not to engage in dilatory pretrial tactics." Costa, 626 A.2d at 570. In this context, Rule 238 serves two related purposes. "Undeniably, [Rule 238] serves to compensate the plaintiff for the inability to utilize funds rightfully due him, but the basic aim of the rule is to alleviate delay in the disposition of cases, thereby lessening congestion in the courts." Laudenberger, 436 A.2d at 151. To accomplish that aim, the Pennsylvania courts do not apply Rule 238 without regard for the defendant's fault in hampering early settlement and adjudication. 9

> In making a decision on a plaintiff 's entitlement to delay damages[,] the mere length of time between the starting date and the verdict is not to be the sole criterion. The fact finder shall consider: the parties' respective responsibilities in requesting continuances[;] the parties' compliance with rules of discovery; the

_____

8. "Conversely, delay damages also prevent a defendant from being unjustly enriched by keeping the interest that could be earned during the litigation process on what is essentially the plaintiff 's money." See Costa, 626 A.2d at 569 n.6 (citations omitted).

9. Indeed, following the decision in Craig v. Magee Memorial Rehabilitation Ctr. Rule 238 was amended to ensure that delay damages turned on fault by eliminating those provisions that granted delay damages automatically and replacing them with a hearing on the parties' fault as discussed in Craig. See Pa. R. Civ. P. 238, Explanatory Comment--1988.

> respective responsibilities for delay necessitated by the joinder of additional parties; and other pertinent factors.

Craig v. Magee Memorial Rehabilitation Ctr., 515 A.2d 1350, 1353 (Pa. 1986). The Pennsylvania Supreme Court has described these considerations as "procedural fault." Costa, 626 A.2d at 570. "The considerations that the Craig court listed as relevant to fault are all factors relevant to the delay of trial." Id. Rule 238 thus exists as a hybrid prejudgment interest statute, attempting to make whole the tort victim who has been denied use of his or her money rightfully due when the cause of action accrued, but conditioning the grant of that remedy on the parties' relative "procedural fault" in delaying adjudication of the underlying tort.

C.

Three other courts of appeals have addressed whether prejudgment interest on a personal injury award is entitled to exemption from taxation pursuant to 26 U.S.C. S 104(a)(2) because it is received "on account of " personal injury. See Rozpad v. Commissioner, 154 F.3d 1, 6 (1st Cir. 1998) (discussing R.I. Gen. Laws S 9-21-10 (1985)); Brabson v. United States, 73 F.3d 1040, 1047 (10th Cir.) (discussing Colo. Rev. Stat. S 13-21-101(1) (1979)), cert. denied, 519 U.S. 1039 (1996); Kovacs v. Commissioner, 100 T.C. 124, 130 (1993) (discussing Mich. Comp. Laws S 600.6013 (1987)), aff 'd without opinion, 25 F.3d 1048 (6th Cir.), cert. denied, 513 U.S. 963 (1994). All have found that prejudgment interest is taxable.

In Kovacs, the first of the prejudgment interest cases, the Tax Court parsed the traditional distinction between "damages" and "interest" and noted that "damages are the principal sum on which the interest is owed, and ordinary usage suggests the two are separate." Kovacs , 100 T.C. at 129. The Court went on to cite extensively from the long tradition of taxing postjudgment interest without regard to the fact that it was earned on a personal injury award. See id.; see also Aames v. Commissioner, 94 T.C. 189 (1990) ("The nature of interest is that it is paid because of delay in

13

the receipt of funds, in this case the principal amount awarded to plaintiff and designated `damages' by the Massachusetts Supreme Judicial Court. As interest, it is taxable to petitioner."); Riddle v. Commissioner, 27 B.T.A. 1339, 1341 (1933) ("The rule that we draw from the above cases is that interest is properly allowable [as income] upon a judgment or award of damages for personal injuries when the amount of the damages has been ascertained and reduced to judgment."). Lacking any indication in Michigan law that prejudgment interest should be considered differently from "interest" generally, the Court concluded that prejudgment interest was not exempted from income simply because it was earned on a personal injury award,10 and the Sixth Circuit affirmed. Kovacs, 100 T.C. at 131.

The Tenth Circuit in Brabson was critical of the Kovacs opinion's overt reliance on the labels "damages" and "interest" in determining the taxability of prejudgment interest. Brabson, 73 F.3d at 1045. Brabson's rejection of Kovacs was due, in part, to the fact that the Colorado Supreme Court had characterized prejudgment interest as a component of damages, thus blurring meaningful

distinction between the two concepts. See Allstate Ins. Co.
v. Starke, 797 P.2d 14, 19 (Colo. 1990) ("prejudgment
_____

10. We reject the argument proffered by the dissent in Kovacs, and
suggested by the Taxpayers here, that the Periodic Payment Settlement
Act of 1982, Pub. L. 97-473, S 101, 96 Stat. 2605 (1982) -- which added
the phrase "and whether as lump sums or periodic payments" after the
clause "whether by suit or agreement" in S 104(a)(2) -- was also intended
by Congress to make all receipts of interest on personal injury awards
nontaxable. See Kovacs, 100 T.C. at 134-35 (Halpern, J., dissenting). As
has been frequently noted, neither the text of the statutory language nor
its legislative history, S. Rep. No. 97-646, at 8 (1982) ("This provision
is
intended to codify, rather than change, present law"), supports the
dissent's position that Congress intended substantive changes to the
treatment of interest in S 104(a)(2). See Rozpad, 154 F.3d at 5 ("[I]t
seems likely that Congress's decision not to tax periodic payments
reflects recognition of the administrative difficulties of such a task--
and
nothing more."); Brabson, 73 F.3d at 1045 n.5 ("There is nothing in the
act . . . that indicates a general Congressional or administrative
position
toward the exclusion of prejudgment interest."); Kovacs, 100 T.C. at 132
("[W]e perceive no relief that [petitioners who receive a lump sum award]
can derive from the Periodic Payment Settlement Act of 1982.").

14

interest is an element of compensatory damages in actions
for personal injuries, awarded to compensate the plaintiff
for the time value of the award eventually obtained against
the tortfeasor"). Nonetheless, the Court in Brabson found
prejudgment interest to be taxable for two reasons.

First, it noted that "[p]rejudgment interest was rarely
available under the common law, and never for personal
injuries." Brabson, 73 F.3d at 1046. Because the common
law in Colorado had never provided for prejudgment
interest on personal injuries until the amendment of Colo.
Rev. Stat. S 13-21-101(1) to that effect in 1979, the Tenth
Circuit concluded that Congress could not have intended
prejudgment interest to be included among those damages
exempt from taxation in the predecessor provisions to
today's S 104(a)(2). Id. This conclusion was well-founded, for
it is beyond cavil that Congress in the early twentieth
century was cognizant of the common law prohibition on
the award of prejudgment interest in personal injury
actions. See Monessen S.W. Ry. Co. v. Morgan, 486 U.S.
330, 337 (1988) (discussing whether Congress provided for
prejudgment interest in the Federal Employers' Liability Act
of 1908 ("FELA") and noting that Congress was aware that

"the common law did not allow prejudgment interest in suits for personal injury or wrongful death. . . . This was the rule in the federal courts."). The Brabson court thus discounted the characterizations of the Colorado Supreme Court that prejudgment interest was an element of compensatory damages. It instead recognized Congress provided no indication that prejudgment interest should be exempted from taxation as received on account of a personal injury. Brabson, 73 F.3d at 1046."While the Colorado statute may contemplate a different understanding of the concept of damages, we believe it contrary to the concept of damages for personal injuries as understood in the Revenue Act of 1918 and maintained ever since." Id.

Secondly, the Tenth Circuit in Brabson recognized that delay damages did not fit easily within the human capital rationale that underlies S 104(a)(2). "[C]ompensation for the lost time value of money is caused by the delay in attaining judgment. Time becomes the relevant factor, not the injury

15

itself -- the longer the procedural delay, the higher the amount." Brabson, 73 F.3d at 1047. The Brabson court noted that the quantity of prejudgment interest turns not on the personal injury itself, but instead on the time value of money. It concluded that the time value of money is not received "on account of " a tort-like injury and therefore cannot satisfy the second showing required by Schleier, 515 U.S. at 337. "In short, though [prejudgment interest] is related to the injury, both in terms of existence and computation, the award of prejudgment interest is not linked to the injury in the same direct way as traditional tort remedies." Brabson, 73 F.3d at 1047.

Lastly, the First Circuit in Rozpad, 154 F.3d at 5-7, neatly synthesized the Kovacs and Brabson decisions. The Court agreed with the conclusion in Kovacs that there is no distinction between prejudgment and postjudgment interest.

> It is true that many of the cases discussed in Kovacs deal with post-judgment interest--but the petitioners fail to persuade us that this distinction makes a meaningful difference. Interest, whether pre- or post-judgment, compensates for delay in payment, and is specifically included in the litany of income items subject to taxation under section 61.

Rozpad, 154 F.3d at 5. The First Circuit also credited Brabson's application of the second requisite showing

under Schleier -- that "the damages were received on account of personal injuries or sickness." Schleier, 515 U.S. at 337. Applying the two-part test of Schleier , Rozpad concluded, much like Brabson, "that prejudgment interest is not `damages' received `on account of ' a personal injury, and is, therefore, taxable." Rozpad, 154 F.3d at 6. The Court thought it important that, under Rhode Island law, "interest is separate and distinct from damages, and is awarded mainly to compensate for a delay in payment." Id. This delay in payment is not caused by the personal injury, but rather "the injury causes damages, thus creating the fund on which interest for delay in payment is owed." Id. The First Circuit then reiterated Brabson's conclusion that Congress could not have intended that prejudgment interest be included in the predecessor to S 104(a)(2),

16

because prejudgment interest was unavailable at the common law in personal injury torts. Id. at 7.

We discern no meaningful distinction between delay damages received pursuant to Rule 238 and the prejudgment interest statutes in cases such as Kovacs, Brabson and Rozpad.11 The common law in Pennsylvania is no different from that in Colorado or Rhode Island with respect to prejudgment interest. Personal injury plaintiffs in neither of these states were entitled to prejudgment interest as a component of their remedy at the common law. See Conover, 112 A. at 752 (Pennsylvania); Brabson, 73 F.3d at 1046 (Colorado); Rozpad, 154 F.3d at 7 (Rhode Island). Prejudgment interest in personal injury cases

> was unheard-of in 1919 when Congress enacted the direct lineal ancestor of section 104(a)(2), section 213(b)(6) of the Revenue Act of 1918, ch. 18, 40 Stat. 1057, 1066 (1919). Since the exclusion for personal injury awards has been handed down almost verbatim from 1919 forward, Congress could not conceivably have intended the exclusion to apply to prejudgment interest.

Rozpad, 154 F.3d at 7. As noted above, the Supreme Court used similar reasoning in concluding that FELA, enacted in 1908, did not provide for the award of prejudgment interest because the common law did not allow for it and it was "unpersuaded that Congress intended to abrogate that doctrine sub silentio." Monessen, 486 U.S. at 337-38 (concluding that Pennsylvania courts may not award prejudgment interest pursuant to Rule 238 in FELA actions). We must similarly conclude that Congress did not

11. Indeed, in Laudenberger, the Pennsylvania Supreme Court described the Michigan prejudgment interest statute, Mich. Comp. Laws S 600.6013, discussed in Kovacs, the Colorado prejudgment interest statute, Colo. Rev. Stat. Ann. S 13-21-101, discussed in Brabson, and the Rhode Island prejudgment interest statute, R.I. Gen. Laws S 9-21-10, discussed in Rozpad, among others, as "similar pre-trial interest provisions." Laudenberger, 436 A.2d at 153. The only distinction drawn between these statutes and Rule 238 in Laudenberger was their method of enactment, the former three by legislative enactment and the latter by the promulgation of court rules. Id.

17

intend S 104(a)(2) to exempt prejudgment interest when no Pennsylvania plaintiff recovering for personal injury would have been awarded such interest at common law.

The Taxpayers' attempts to argue otherwise are unpersuasive. They would have us draw a distinction between "interest," awarded as of right for the failure to pay a liquidated sum on a fixed day, and "compensation for delay," which was sometimes available in property torts such as "unintentional conversion or destruction of property." Citizens' Natural Gas Co., 18 A. at 600. From this distinction, the Taxpayers argue that while interest was not awarded in personal injury cases at the common law, "compensation for the delay" was awarded when the circumstances demanded, and thus it is proper to assume that the award of "compensation for the delay" should be exempted from taxation. This argument is unpersuasive for two reasons. One, this Court has previously noted that the distinction between "interest" and "compensation for the delay" is minimal -- "a charming legal fiction, in the true ancient Roman ficto, fictiones, sense." American Enka, 686 F.2d at 1056. Two, even acknowledging the distinction between "interest" and "compensation for the delay," neither of these theories of recovery would have entitled the Taxpayers in this case to the recovery of prejudgment interest prior to the enactment of Rule 238 because neither extended to personal injuries. See Conover, 112 A. at 752; Witmer, 88 A. at 315; McGonnell, 83 A. at 283; Pittsburgh S. Ry. Co. 104 Pa. at 317. Thus, irrespective of any distinction between "interest" and "compensation for delay," the common law history in Pennsylvania is no different than that announced in Brabson:

> Prejudgment interest was rarely available under the common law, and never for personal injuries. . . . The requirement of a liquidated sum, `fixed and known,' posed the greatest obstacle towards recovery of such interest.

. . . .

> Thus prejudgment interest, when awarded at all,
> generally compensated for pecuniary harms, most often
> easily determinable contractual ones. It is only more

18

> recently, pursuant to certain statutes, that
> prejudgment interest has become recoverable in
> personal injury suits on nonpecuniary harms.

Brabson, 73 F.3d at 1046. Lacking any basis in common
law for the award of prejudgment interest, in any form, for
cases such as the Taxpayers', it cannot be said that
Congress, in enacting S 104(a)(2) and its predecessors,
intended the exclusion of prejudgment interest, such as
Rule 238 delay damages, from income.

In contrast, it is well established that the exclusion for
personal injury was intended to exempt from income
damages that "substitute for any normally untaxed
personal (or financial) quality, good, or `asset.' " O'Gilvie,
519 U.S. at 86. The Supreme Court recognized in O'Gilvie
that the "human-capital" rationale is founded on tax-
equality, that is, establishing that an injured person is no
better or worse off, from a tax perspective, as a similar
person who had not been injured. Id. (holding that punitive
damages are not received "on account of " a personal
injury); see also Glenshaw Glass, 348 U.S. at 433 n.8
("Damages for personal injury are by definition
compensatory only."). While the Court in O'Gilvie recognized
that S 104(a)(2) does not accomplish this purpose perfectly
because it excludes from taxation both the traditionally
untaxed "damages that aim to substitute for a victim's
physical or personal well-being" and the traditionally taxed
"damages that substitute . . . for lost wages," nevertheless
the Court emphasized that the human capital rationale was
the "original mooring[ ]" of S 104(a)(2). O'Gilvie, 519 U.S. at
86. That original mooring dictates that "there is no strong
reason for trying to interpret the statute's language to reach
beyond those damages that, making up for a loss, seek to
make a victim whole, or speaking very loosely, `return the
victim's personal or financial capital.' " Id.

While Taxpayers repeatedly assert that delay damages
are intended to make a victim whole, see Costa , 626 A.2d
at 569 ("the `essence of this duty' was merely to extend the
`compensatory damages necessary to make a plaintiff
whole' "), we must recognize that the purpose they serve is
more specific than that simple generalization. As stated in

Laudenberger, the essence of Rule 238 is to"provide[ ]

compensation to a plaintiff for delay in receiving the monetary damages owing as a result of a defendant's tort. This serves to indemnify the plaintiff for the money he would have earned on his award if he had promptly received it." 436 A.2d at 154. It cannot be rationally contended that the "money he would have earned on his award" is anything but interest. Interest is"the compensation fixed by agreement or allowed by law for the use or detention of money. . ." Black's Law Dictionary 816 (7th ed. 1999).

As noted in Kovacs, since the 1933 case of Riddle v. Commissioner, 27 B.T.A. 1339, interest received after judgment is taxable. See Kovacs, 100 T.C. at 129. "Since Riddle, the exclusion for personal injury damages has been reenacted and amended numerous times. Nevertheless, the statute continues to exclude only `damages' and omits any mention of `interest'. This implies a continuing acceptance by Congress of the existing interpretation of the exclusion." Id. at 130.

We are unable to divine a meaningful distinction between postjudgment interest and delay damages. Both compensate the plaintiff for the delay in payment of the principal – the jury's damage award. See Rozpad , 154 F.3d at 5. Unless the intervention of the judgment somehow changes the nature of that additional compensation, delay damages or prejudgment interest should be taxable in the same way as postjudgment interest. See 26 U.S.C. S 61(a)(4).

Taxpayers distinguish Rule 238 delay damages from interest generally because they are not awarded in every case as a matter of right, but instead only when the defendant caused delay or failed to make a reasonable settlement offer. See Laudenberger, 436 A.2d at 151 ("[T]his rule serves to compensate the plaintiff for the inability to utilize finds rightfully due him"). Their argument posits that the harm caused to the plaintiffs by delay in receiving compensation for their injury is a separate wrong that Pennsylvania has chosen to compensate with damages. They argue that Pennsylvania courts have established that Rule 238 protects "the personal right of the plaintiff to have his day in court and not to suffer the increment to the

indignity, pain, embarrassment and humiliation of his
bodily injuries caused by the delay in receiving just
compensation for those injuries . . . ." Taxpayers' Opening
Br. at 26. The defendant's liability for this compensation is
described as a "procedural fault." Costa , 626 A.2d at 570.

We find this argument unavailing because the Taxpayers
cannot establish that a remedy for the harm incurred in
this respect is based on "tort" or "tort-like" rights.12 See
Schleier, 515 U.S. at 335. There is no doubt that the
Taxpayers suffered some difficulties and harms resulting
from the delay of more than ten years in receiving
recompense for the automobile accident, but "[t]he fact that
[an action] causes harm to individuals does not
automatically imply, however, that there exists a tort-like
`personal injury' for purposes of federal income tax law."
United States v. Burke, 504 U.S. 229, 238 (1992). Instead,
the Supreme Court in Burke emphasized the consideration
of traditional tort principles in evaluating theS 104(a)(2)
exemption and stated that "one of the hallmarks of
traditional tort liability is the availability of a broad range
of damages to compensate the plaintiff `fairly for injuries
caused by the violation of his legal rights.' " Id. at 234-35
(citation omitted). Rule 238 delay damages do not fit within
this injury compensation rubric. Instead, they only
compensate for the additional economic harm -- as
opposed to the injury itself -- caused by the deprivation
over a period of time of the underlying remedy. See
Laudenberger, 436 A.2d at 154.

Recognizing that the narrow remedial scheme of Rule 238
is persuasive evidence that delay damages are not based in
tort or tort-type rights, Taxpayers argue that delay damages
should be analogized to liquidated damages that serve a
compensatory function. The Supreme Court noted in
Schleier, while discussing the taxability of the liquidated
_____

12. While we acknowledge that the underlying recovery of damages for
personal injury is based in tort, we are required under S 104(a)(2) to
parse the separate elements of the damages award to ensure that each
fulfills the statute's criteria. See Schleier , 515 U.S. at 330 ("each
element
of the settlement is recoverable not simply because the taxpayer received
a tort settlement, but rather because each element of the settlement
satisfies the requirement set forth in S 104(a)(2)").

21

damages permitted by the Age Discrimination in
Employment Act of 1967 (ADEA), "that if Congress had

intended the ADEA's liquidated damages to compensate plaintiffs for personal injuries, those damages might well come within S 104(a)(2)'s exclusion." Schleier, 515 U.S. at 331. From this Taxpayers argue that Rule 238 is a liquidated damages scheme, intended to compensate plaintiffs for personal injuries, and that such damages are therefore exempt from taxation under S 104(a)(2). We reject this argument, however, for the same reason that the Supreme Court rejected the argument in Schleier – neither delay damages nor liquidated damages in the ADEA compensate for a `personal,' as opposed to `economic,' harm. The Court noted in both Schleier13 and Burke that "compensation" exempt from taxation underS 104(a)(2) must be for "traditional harms associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages." Burke, 504 U.S. at 239; Schleier, 515 U.S. at 335–36 (citing Burke). While we recognize that the deprivation of a monetary remedy for an underlying personal injury may, of itself, cause additional emotional distress and other damages, Rule 238 provides only for compensation for the "economic" harm caused by the defendant's refusal to settle reasonably and expediently a meritorious claim and not for the potential harm on which Taxpayers assert we should exempt all delay damages. Because compensation for "economic" harm in the form of interest is usually taxable and thus is "not a substitute for any normally untaxed personal (or financial) quality, good, or `asset,' " we see no reason why either the statutory text of S 104(a)(2) or its rationale would support exempting delay damages from income. O'Gilvie, 519 U.S. at 86.

Nor is our conclusion that delay damages are not included within the scope of S 104(a)(2) swayed by the Taxpayers' argument that the 1996 amendments to that statute alter our analysis. In 1996, Congress passed the Small Business Job Protection Act, which expressly made

_____

13. Indeed, the Schleier Court noted the presence of liquidated damages in the ADEA was not "sufficient to bring it within Burke's conception of a `tort type righ[t].' " Schleier , 515 U.S. at 335.

22

punitive damages taxable and limited the exemption to "physical" personal injuries and "physical" sickness. See 110 Stat. 1755, 1838–39, Pub. L. 104–188, S 1605 (August 20, 1996). Because the Taxpayers' settlement was agreed upon before the effective date of the amendment, it is undisputed that the additions to S 104(a)(2) do not apply to this case. Nonetheless, the Taxpayers argue that language

from the House Report on the amendments to S 104(a)(2), when read in conjunction with the Supreme Court's decision in Schleier, demonstrates a congressional intent that courts construe the personal injury exemption broadly to include delay damages.

The passage on which Taxpayers rely states in its relevant portion that "[i]f an action has its origin in a physical injury or physical sickness, then all damages (other than punitive damages) that flow therefrom are treated as payments received on account of physical injury or physical sickness." H.R. Rep. No. 104-586 at 143-44 (1996) (emphasis added). We ignore for the moment that the 1996 amendments are inapplicable to the Taxpayers' action. Their argument is that the use of "all damages . . . that flow therefrom" indicates a congressional intent to expand S 104(a)(2) to include delay damages.

This is unpersuasive for two reasons. One, the House Report on which the Taxpayers rely does not mention interest at all, but instead was intended to emphasize that damages for emotional distress, defamation, discrimination and other non-physical torts do not result in tax-exempt recoveries under S 104(a)(2). Id. Thus, the legislative history is not clearly in support of the Taxpayers' suggested interpretation of the statute. Two, the Supreme Court's opinion in O'Gilvie forecloses the possibility that all damages that flow from a personal injury are exempt from taxation. 519 U.S. at 82. In O'Gilvie, decided in 1998 but interpreting the same pre-amendment version of S 104(a)(2) with which we are concerned, the Court held that the"on account of " language of the statute cannot be interpreted to require only a "but-for" connection between the underlying personal injury and the award at issue. Id. It cautioned that such a broad scope "would thereby bring virtually all personal injury lawsuit damages within the

23

scope of the provision, since: `but for the personal injury, there would be no lawsuit, and but for the lawsuit, there would be no damages.' " Id. Thus, the Court rejected a formulation of "on account of " that is substantially identical to the language used in the House Report –that "all damages . . . that flow therefrom" should be exempt. Even if we were to assume that this lone statement from the legislative history of the 1996 amendment applied to prior versions of the statute, the Supreme Court has rejected such an expansive interpretation of S 104(a)(2).

Having considered both the language of S 104(a)(2) and its rationale, we are not persuaded that Rule 238 delay

damages can be meaningfully distinguished from prejudgment interest in general simply because they are only available when the defendant has delayed the trial or not made an adequate settlement offer. For this reason, we affirm the District Court's ruling that the Taxpayers' recovery of delay damages should have been taxed.

## IV. ALLOCATING DELAY DAMAGES IN SETTLEMENT

Having concluded that delay damages received pursuant to Pennsylvania Rule of Civil Procedure 238 are not exempt from taxation as damages received on account of personal injury, we proceed to whether the District Court allocated the proper measure of delay damages from the total recovery received in settlement. The IRS suggested, and the District Court found, that 46% of the $3.4 million received in settlement was properly allocated to delay damages because that was the same proportion of the trial court's total award apportioned to delay damages. After reducing the taxable income to the amount actually received by the Taxpayers after payment of attorneys' fees and costs,14 the

_____

14. No party has contested the propriety of the IRS's initial deduction of all legal fees and expenses from the award before determining taxable income. But see Robinson v. Commissioner, 102 T.C. 116, 137 n.15 (1994), ("In the case of a settlement that includes damages both includable in income under sec. 61(a) and excludable from income under sec. 104(a)(2), the Court generally determines the deductibility of any underlying legal fees by allocating the fees in the same proportion as the excludable and includable portions of the settlement.") (citing Stocks v.

24

IRS proposed to tax 46% of the net settlement received by the Taxpayers. Using this formula, the IRS determined that $1,033,954 was taxable income.-

Before proceeding to the Taxpayers' assignments of error on this point, we note that "the taxpayer bears the ultimate burden of proving, by a preponderance of the evidence, that [the IRS's] assessment is erroneous." Sullivan v. United States, 618 F.2d 1001, 1008 (3d Cir. 1980). Because IRS tax assessments are presumed to be correct, "[i]t is not enough for [the Taxpayers] to demonstrate that the assessment of the tax for which refund is sought was erroneous in some respects." United States v. Janis, 428 U.S. 433, 440 (1976). Instead, the taxpayer "bears the burden of proving the amount he is entitled to recover." Id.; see also Freck v. Internal Revenue Serv., 37 F.3d 986, 992 n.8 (3d Cir. 1994) (IRS tax assessments are generally presumed to be correct).

The Taxpayers' burden in this respect is made more difficult by the reasonableness of the IRS's allocation. It is a tenet of federal tax law that income received in settlement of a claim should be taxed in the same manner as if it had been received on that claim in court. See Lyeth v. Hoey, 305 U.S. 188, 196 (1938) ("We think that the distinction sought to be made between acquisition through such a judgment and acquisition by a compromise agreement in lieu of such a judgment is too formal to be sound, as it disregards the substance of the statutory exemption."). To maintain tax equality between settlements and court awards, we determine the tax implications of a settlement by ascertaining the obligation or claim initially resolved by judgment in lieu of which the settlement was made. See Alexander v. Internal Revenue Serv., 72 F.3d 938, 942 (1st Cir. 1995); Getty v. Commissioner, 913 F.2d 1486, 1490 (9th Cir. 1990); Raytheon Prod. Corp. v. Commissioner, 144

_____

Commissioner, 98 T.C. 1, 18 (1992)), aff 'd 70 F.3d 34 (5th Cir. 1995)); Metzger v. Commissioner, 88 T.C. 834, 860 (1987) (same), aff 'd, 845 F.2d 1013 (3d Cir. 1988) (table). Because this issue has not been presented on appeal, we limit our opinion to the propriety of the allocation of net settlement proceeds.

25

F.2d 110, 113 (1st Cir.) ("The test is not whether the action was one in tort or contract but rather the question to be asked is `In lieu of what were the damages awarded?' "), cert. denied, 323 U.S. 779 (1944). Because it is the defendant who chooses to pay settlement of the plaintiff 's claims, several courts have held that, in the absence of a written settlement agreement parsing the claims that comprise a general settlement, it is the "intent of the payor" that is the most persuasive evidence of the nature of claims settled by that party to avoid litigation. See Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965); Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir. 1961); Ray v. United States, 25 Cl. Ct. 535, 540 (1992), aff 'd, 989 F.2d 1204 (Fed. Cir. 1993) (table); Metzger v. Commissioner, 88 T.C. 834, 847 (1987), aff 'd, 845 F.2d 1013 (3d Cir. 1988) (table); Bent v. Commissioner, 87 T.C. 236, 244 (1986), aff 'd, 835 F.2d 67 (3d Cir. 1987); Glynn v. Commissioner, 76 T.C. 116, 120 (1981), aff 'd, 676 F.2d 682 (table) (1st Cir. 1982). "If the settlement agreement lacks express language stating that the payment was (or was not) made on account of personal injury, then the most important fact in determining how section 104(a)(2) is to be applied is `the intent of the payor' as to the purpose in making the payment." Metzger, 88 T.C. at 847-48.

The Taxpayers aver that the Settlement Agreement in this case lacks any express language parsing the payment of the defendants between personal injury damages and delay damages. Lacking any evidence of allocation in the settlement agreement, they maintain that the only evidence presented to the Court was the affidavit of Don P. Foster, Taxpayers' counsel in the personal injury litigation, in which he asserts that no consideration was given to delay damages in the settlement negotiations and that the tax consequences of the agreement were never considered by the parties. Therefore, their argument proceeds, the District Court erred in refusing to credit the only evidence with which it was presented on the subject of allocation.

We are unpersuaded. Because the "intent of the payor" is paramount in determining the nature of the settled claims, it is admittedly difficult to discern the nature of settled claims in an agreement that fails to distinguish the

26

separate elements of recovery. Yet in situations like this,15 where there has been a judgment in a trial court that preceded settlement of the claims, the most persuasive evidence of the payor's intent in settling the case is the previous damages award of that court. Recognizing this logic, the First Circuit has stated that

> when the interest component of a personal injury settlement can be delineated with accuracy and ease-- as when there has been a jury verdict and an ensuing judgment that contains separate itemizations of damages and interest -- a subsequent settlement that does not purport to make a different allocation is quite logically viewed as including a pro rata share of interest.

Rozpad, 154 F.3d at 3-4. This logic is convincing. In Rozpad, two sets of plaintiffs had settled personal injury suits after successfully prosecuting their actions and receiving jury awards for personal injury damages to which prejudgment interest was added by the trial court. Id. at 1. Neither of the settlements allocated the settlement award between personal injury damages and prejudgment interest. Id. The Tax Court rejected plaintiffs' argument that, because the settlement agreement did not allocate between taxable and tax-exempt damages, none of the settlement award was taxable and the First Circuit affirmed. Id. When "the parties have settled a claim for a liquidated amount . . . it is not unfair to assume, in the absence of a contrary allocation . . . that interest and damages compose the same

proportion of the settlement as of the antecedent judgment." Id. at 4.

The IRS and District Court were thus justified in assuming, under the facts of this case, that the proportion of interest to damages reflected that of the preceding

_____

15. The circumstances of this case do not require us to reach the tax consequences of a personal injury settlement agreed upon before adjudication of the claims in court. Cf. Rozpad v. Commissioner, 154 F.3d 1, 3 (1st Cir. 1998) ("When the interest component of a personal injury settlement is difficult to delineate, there is every reason for courts
(and the Commissioner) to defer to section 104(a)(2) and treat the entirety as free from tax.").

judgment. As previously noted, the settlement was for $3.4 million, just fractionally less than the Taxpayers' combined judgment awarded at trial and affirmed on appeal. 16 Thus, the Foster affidavit was not the District Court's only evidence on allocation. It was not even the best evidence.

Nor was it error for the District Court to have rejected Foster's assertions that the settlement contained no delay damages. According to the affidavit, "settlement amounts were derived at solely from a consideration on behalf of the plaintiffs of the risks to which they would be subjected by refusing to settle the case while an appeal was pending." (emphasis added). This statement is not probative of any fact relevant to our inquiry; instead it is the"payor's intent" – the defendants in the Taxpayers' personal injury suit – which is relevant. On the subject of the defendants' intentions, the affidavit states, "discussions with defendants' representatives concerned the considerable exposure to a larger verdict[,] in the event defendants prevailed on the their appeal and a new trial was granted[,] because of Mr. Francisco's continuing and worsening condition." This statement does not help the Taxpayers' argument. For even if the defendants were concerned with the possible exposure to a larger damages award on remand, that does not support the inference that the defendants sought to allocate its payments in this settlement entirely to personal injury, as opposed to some pro rata portion of both personal injury damages and delay damages. That is, the defendants' concern with a later, larger judgment supports the inference that they wished to settle sooner for less money; it does not support the inference that they intended only to pay personal injury compensation in the settlement.17 Indeed, if the defendants

16. Indeed, Foster's affidavit candidly admits that the verdicts were a starting point for settlement negotiations. "The verdicts, including Rule 238 damages, were considered only for the purpose of establishing the dollar exposure around which negotiations with defendants centered."

17. Though not the case here, it is possible that parties could allocate contractually the whole of a settlement only to the non-taxable portion of a prior judgment. In McKay v. Commissioner , 102 T.C. 465, 487 (1994), vacated on other grounds, 84 F.3d 433 (5th Cir. 1996)

were motivated by their future exposure in the event of a possible new trial, they nonetheless had every reason to believe that any future increased judgment would include increased delay damages commensurate with the increased compensatory damages.

Furthermore, even had the District Court accepted the Foster affidavit to establish the proposition that the settlement agreement was intended by the payor to provide no compensation for delay damages, it was within the Court's province to reject that evidence. The general rule is that a trial court may reject the parties' allocation of claims, even when that allocation is contained within the settlement itself. See Delaney v. Commissioner , 99 F.3d 20, 25 (1st Cir. 1996). In Delaney, that court was presented with "a $250,000 postjudgment settlement literally allocating nothing to statutory prejudgment interest notwithstanding the $112,000 prejudgment interest component concededly included in the $287,000 superior court judgment." Delaney, 99 F.3d at 24. Faced with a settlement agreement so markedly different in allocation from the underlying judgment, the Tax Court rejected the parties' allocation of the settlement's components and instead substituted, for tax purposes, the IRS's allocation of the ratio of prejudgment interest to the total award. Id. at 25. The First Circuit affirmed the Tax Court's reallocation, holding that it "supportably ruled that the [taxpayers] had not overcome the presumption of correctness to which the Commissioner's allocation is entitled, [and that] the allocation of 39% of the settlement amount to statutory

(unpublished), the Tax Court found that the payor's intent was only to compensate the non-taxable libel portion of the jury award and not the taxable punitive damages or civil RICO claims. McKay is distinguishable from the current case because that Court found: (1) the parties were adversarial on the allocation because the plaintiff wished to have damages allocated to the RICO claims; (2) the defendant refused to settle

punitive damages and RICO claims; (3) the agreed settlement expressly stated that it did not compensate the plaintiff for the punitive damages and RICO claims; and (4) the resulting settlement of non-taxable, compensatory damages was less than the value of those compensatory claims awarded by the jury. See id. at 484; see also Bagley v. Commissioner, 121 F.3d 393, 397 (8th Cir. 1997) (distinguishing McKay).

prejudgment interest, substantially based upon the aforementioned parallelism [to the trial court's award], did not constitute error." Id. at 25–26. In rejecting the settlement's allocation of no value to prejudgment interest, the Court in Delaney relied on cases that established a duty to look beyond the "language subscribed to by the parties," and to determine if the presumption of correctness attending the IRS's allocation is overcome. Id. at 23. These cases recognize that parties rarely have a bona fide dispute over the allocation of damages within the settlement agreement, and thus the written allocation may be driven by tax considerations and not reflect the true value of settled claims. See Robinson v. Commissioner, 70 F.3d 34, 37–38 (5th Cir. 1995) (holding that the settling parties were not adversaries in determining the allocation of the settlement for tax purposes and that its 5% allocation to taxable punitive damages, after a sizable punitive damages judgment, was not credible), cert. denied, 519 U.S. 824 (1996); Taggi v. United States, 35 F.3d 93, 96 (2d Cir. 1994) ("The Tax Court consistently has stressed the importance of a bona fide dispute over excludable damages."); Threlkeld v. Commissioner, 87 T.C. 1294, 1307 (1986) ("the specific allocation contained in the settlement agreement does not necessarily control in deciding whether the claim being settled arises from a personal injury"), aff 'd, 848 F.2d 81 (6th Cir. 1988); Glynn v. Commissioner, 76 T.C. 116, 121 (1981) (rejecting the settlement agreement's implication that the settled claims might have been for personal injury when the claims asserted by plaintiff were wholly contractual), aff 'd, 676 F.2d 682 (1st Cir. 1982) (table).

It is thus well established that in cases in which the settlement agreement's allocation of damages does not reflect the true nature of the underlying award, the District Court has a duty to look behind the agreement of the parties to discern the true nature of the "payor's intent" in settling claims. Similarly, when a party, such as the Taxpayers here, asserts that the allocation intended by the payor is different than that contained in the underlying judgment (which, if adopted by the IRS, enjoys a rebuttable presumption status), courts are obliged to measure the veracity of, and support for, that assertion. See Kurowski v. Commissioner, 917 F.2d 1033, 1036 (7th Cir. 1990).

Moreover, our review of the District Court's determination of the payor's intent is particularly deferential because it must weigh "all of the facts and circumstances in ascertaining the true substance or nature of the claim that was settled." McKay v. Commissioner, 102 T.C. at 482. Questions of what claims the payors intended to settle[18] are factual. See Stocks v. Commissioner, 98 T.C. 1, 11 (1992) ("The first matter that we must determine is what the settlement settled. This is a factual inquiry."). We will only disturb a court's findings of fact when clearly erroneous. See Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co., 988 F.2d 386, 401 (3d Cir. 1993) ("The intent of the parties to ambiguous provisions in a contract is, however, a question of fact that an appellate court can set aside only if it is clearly erroneous."). On the basis of the facts presented, we cannot conclude that the District Court clearly erred in refusing to credit the Taxpayers' assertions that the "payor's intent" in settling the lawsuit was only to compensate for personal injuries and not the delay damages to which Taxpayers' would be otherwise entitled.[19]

Having rejected the Taxpayers' assertions on this point, we agree that the District Court correctly concluded that the IRS's use of a ratio method to determine the portion of the settlement allocated to delay damages was correct. Taxpayers have not submitted credible evidence that would

_____

18. "[B]asic contract principles do indeed apply to settlement agreements." In re Cendant Corp. Prides Litig., 233 F.3d 188, 193 (3d Cir. 2000).

19. We find the Tax Court's holding in McShane v. Commissioner, 53 T.C.M. (CCH) 409, 1987 WL 40219 (1987), to be distinguishable. In that case, the jury had awarded personal injury damages, but the trial court had not yet added prejudgment interest and entered an enforceable judgment when the case was settled. See id. Furthermore, the settlement agreement explicitly provided that sums paid were "without costs and interest." Id. Thus, in light of the pendency of any prejudgment interest, the Tax Court found that the payor's intent was only to compensate plaintiffs for their non-taxable personal injury. See id. In this case, delay damages were added to the jury award in a definite amount and were a component of an enforceable judgment that had already been affirmed once on appeal. It was thus reasonable for the District Court to find that the intentions of the defendants in this case were different from the intentions of the defendants in McShane. See Delaney, 99 F.3d at 25 n.4.

rebut, by a preponderance of the evidence, that the defendants' intentions in settling their suit were anything other than to avoid the underlying judgment. Because that judgment contained both personal injury damages and delay damages, the IRS was correct in allocating the settlement similarly.

Lastly Taxpayers argue that, if we do not accept their argument that no part of the settlement was allocated to delay damages, the Government should only tax the amount by which the net settlement exceeded the award of damages given by the jury.[20] We first note that no court has adopted this methodology for calculating the taxable portion of a settlement recovery.[21] The District Court dismissed this methodology out of hand, stating "I do not find this argument persuasive."

_____

20. Subtracting the personal injury award ($1,910,000) from the net settlement received by the Taxpayers ($2,247,727) yields $337,727, which is the amount actually received by the Taxpayers in excess of the jury award.

21. Taxpayers assert that this methodology is consistent with that in Bagley v. Commissioner, 121 F.3d 393 (8th Cir. 1997). In Bagley, the parties settled a defamation suit with a punitive damages component after the Court of Appeals remanded the case to the district court. Id. at 394. Even though the initial judgment on the remanded claim had been for $1 million in compensatory damages and $5 million in punitive damages, the parties settled for $1.5 million prior to trial. Id. Though the
IRS had sought to tax a greater amount, the Tax Court found that the payor's intent was to minimize the payment of punitive damages, and thus allocated $1 million to compensatory defamation damages and $500,000 to taxable punitive damages. Id. at 395. The Eighth Circuit rejected the taxpayers' argument that none of the damages were for punitive damages, even though there was some evidence from negotiations in support of that contention. Id. at 395–96.

While the allocation in Bagley did result in taxation of only that amount by which the settlement exceeded the jury's compensatory, non-taxable damages, this does not support the Taxpayers in this case because the result in Bagley was intended by the settling parties, as found by the Tax Court after consideration of all relevant circumstances. Id. at 395. In contrast, the Taxpayers have no evidence that any party to this underlying litigation intended such an allocation and instead have suggested this technique as a normative principle, one to which we do not subscribe.

32

Nor do we. The Taxpayers' suggested calculation is initially appealing because it would tax as delay damages only that amount by which their recovery exceeded the jury award. On closer analysis, however, it is apparent that this allocation method assumes that, for some inexplicable reason, the attorneys' fees were deducted only from the delay damages and not in pro rata portions from the Taxpayers' recovery as a whole. Not only is this supposition untenable, but it would also result in a scheme by which the quantity of the judgment that is taxable would turn on the amount of attorneys' fees and costs. The anomalous result would be that plaintiffs identically situated to the Taxpayers but who represented themselves pro se  and obtained an identical recovery would pay substantially more taxes on their judgment than the Taxpayers in this case. There is no reason that the tax incidence of a recovery of delay damages should be almost entirely mitigated by attorneys' fees and costs deducted from the recovery. Calculation of taxes is not a reprise of Jarndyce v. Jarndyce, the legendary suit in Charles Dickens' Bleak House, in which resolution came about only because legal fees ate up the whole of an estate.

Indeed, the inherently rational and fair method to disaggregate taxable delay damages from non-taxable personal injury damages in a general settlement following a judgment containing both, in the absence of persuasive evidence supporting a contrary allocation, is the ratio method adopted by the IRS and District Court in this case. The IRS's allocation accomplishes the purpose of S 104(a)(2) by exempting only those damages received in compromise of the personal injury claim while permitting taxation of the Rule 238 damages added to the award to compensate the plaintiff for delay. We therefore affirm the judgment of the District Court awarding summary judgment in favor of the Government on the allocation issue.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

33